397 A.2d 1309.

STATE *vs.* ROBERT CLINE.

STATE *vs.* WILLIAM H. ANTHONY

FEBRUARY 19, 1979.

PRESENT: Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J. Because of substantial public interest, we have decided to make a piecemeal review of the criminal appeals of Robert Cline (Cline) and William H. Anthony (Anthony). Cline is before us following his conviction by a Superior Court jury of the April 11, 1974, first-degree murder of Frank A. Pirri and the trial justice's imposition of a mandatory death sentence. At the time of the homicide, Cline was an escapee from the Adult Correctional Institutions. Anthony stands convicted of the February 28, 1975, first-degree murder of a fellow inmate at the Adult Correctional Institutions. However, the trial justice deferred imposition of sentence, and, acting pursuant to the provisions of G.L. 1956 (1969 Reenactment) §12-22-10, certified to us a number of questions, several of which relate to the 1973 amended version of §11-23-2.

Although these appeals raise numerous issues, we have consolidated them for the sole and specific purpose of determining whether the imposition of a death sentence as mandated by §11-23-2 violates the Eighth and Fourteenth Amendments of the United States Constitution.

To put the death-penalty portion of §11-23-2 in its proper historical perspective, we would point out that prior to June 26, 1973, the death penalty (hanging) was imposed only on any person who committed "murder while under the sentence of imprisonment for life." Following a series of disturbances at the Adult Correctional Institutions which culminated in the slaying of a prison guard, the General Assembly met in special session during the summer of 1973 and on June 26, 1973, amended the death-penalty portion of §11-23-2 so that it now reads:

> "Every person who shall commit murder while committed to confinement to the adult correctional institutions or the state reformatory for women shall be

> punished by death. The punishment of death shall be inflicted by the administration of a lethal gas."

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments [shall not be] inflicted," and the Fourteenth Amendment by its due process clause prohibits the infliction of such punishment by a state. *Robinson* v. *California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962). In *Furman* v. *Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), the question was whether "the imposition and carrying out of the death penalty [in the cases before the Court] constitute cruel and unusual punishment." *Id.* at 239, 92 S. Ct. at 2727, 33 L. Ed. 2d at 350. In each case the determination as to whether the punishment should be death or a lesser punishment was left to the discretion of either the judge or the jury. Two of the justices were of the opinion that the Eighth Amendment was an absolute bar to the imposition of the death penalty. Three justices concluded that the death penalty was not per se unconstitutional but voted to reverse on the basis that discretionary sentencing, unguided by legislatively defined standards, violated the Eighth Amendment because it permitted the death penalty to be "wantonly" and "freakishly" imposed or afforded "no meaningful basis for distinguishing the few cases in which it [was] imposed from the many cases in which it [was] not," or gave rise to the possibility "where equal or lesser sentences were imposed on the elite, [and] a harsher one on the minorities or members of the lower castes." The remaining four justices had no doubt as to the constitutionality of the death sentence.

The diversity of views expressed in *Furman* caused state legislatures who desired to retain a constitutionally viable death penalty to revise their criminal codes. Some viewed *Furman* as requiring a statutory mandatory death sentence for certain classes of proven crime. In other jurisdictions *Furman* was considered as faulting only an unbridled discretion. There, states enacted statutes that controlled the sentencing authority's discretion.

In all cases following *Furman* the United States Supreme Court has consistently taken the position that the sentencing authority should be well informed and that the circumstances of the offense, along with the character, record, and propensities of the effender, must be given careful consideration before the death sentence can be constitutionally imposed. In *Woodson* v. *North Carolina*, 428 U.S. 280, 304, 96 S. Ct. 2978, 2991, 49 L. Ed. 2d 944, 961 (1976), the Court stated that

> "the fundamental respect for humanity underlying the Eighth Amendment * * * requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death."

Similar sentiments have been expressed in *Gregg* v. *Georgia*, 428 U.S. 153, 189, 96 S. Ct. 2909, 2932, 49 L. Ed. 2d 859, 883 (1976); *Proffitt* v. *Florida*, 428 U.S. 242, 258, 96 S. Ct. 2960, 2969, 49 L. Ed. 2d 913, 926 (1976); *Roberts* v. *Louisiana*, 428 U.S. 325, 333-34, 96 S. Ct. 3001, 3006, 49 L. Ed. 2d 974, 981-82 (1976); and *Roberts* v. *Louisiana*, 431 U.S. 633, 637, 97 S. Ct. 1993, 1996, 52 L. Ed. 2d 637, 642 (1977).

The Supreme Court first ruled on the constitutionality of a mandatory death penalty statute in *Woodson* v. *North Carolina*, 428 U.S. 280, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). There, the statute provided the death sentence for all persons convicted of first-degree murder. In holding the statute unconstitutional, the Court said:

> "North Carolina's mandatory death penalty statute for first-degree murder departs markedly from contemporary standards respecting the imposition of the punishment of death and thus cannot be applied consistently with the Eighth and Fourteenth Amendments' requirement that the State's power to punish 'be exercised within the limits of civilized standards.' " *Id.* at 301, 96 S. Ct. at 2889, 49 L. Ed. 2d at 959.

In a later case the United States Supreme Court also held a mandatory death penalty statute unconstitutional. *Roberts* v. *Louisiana*, 431 U.S. 633, 97 S. Ct. 1993, 52 L. Ed. 2d 637 (1977). In *Roberts*, the Court held unconstitutional a Louisiana statute requiring the imposition of a death sentence for killing a peace officer.

Recently, in *Lockett* v. *Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2965, 57 L. Ed. 2d 973 (1978), the plurality opinion of the Chief Justice, in which Justices Stewart, Powell, and Stevens joined, states that the Eighth and Fourteenth Amendments require that the sentencing authority, be it judge or jury, be allowed to consider as a mitigating factor "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."

Thus, a review of the Supreme Court's pronouncements makes it clear that a death sentence imposed by a sentencer who is not statutorily authorized to consider mitigating circumstances is a nullity. The identical faults that existed in the statutes declared unconstitutional in *Woodson* and *Roberts* are present in §11-23-2. There is no provision for the trial justice, in imposing sentence, to consider any mitigating factors whatsoever. It is obvious that the death-penalty portion of §11-23-2 is the same type as has been stricken down by the Supreme Court, and thus it cannot stand.

The state, apparently anticipating the patent unconstitutionality of §11-23-2, asks that we construe this legislation to meet the standards enunciated in the opinions of the Supreme Court that have considered the various facets of the death-penalty issue. Actually, we see nothing to construe. The General Assembly has said in clear and concise language that the death penalty will be imposed on any person who commits murder "while committed to confinement to the adult correctional institutions or the state reformatory for women * * *." The task which the state wishes us to perform is one that comes within the exclusive purview of the legislative branch of our state government. Parenthetically, it

should be noted that on January 25, 1979, Representatives Zygmunt J. Friedemann and Andrew E. McConnell introduced a bill (79-H 5360) entitled "An Act Relating to Capital Punishment." The bill was referred to the House Committee on Judiciary. An explanation of the bill's contents prepared by the Legislative Council indicates: "This act would provide for the imposition of the death penalty in certain circumstances and establishes a procedure for the review of such sentencing."

In conclusion, in response to those pertinent questions certified to us in State v. William H. Anthony, we hold that the present death-penalty proviso of §11-23-2[1] amounts to cruel and unusual punishment and thus violates the Eighth Amendment to the United States Constitution. We shall defer any responses to the other facets of the certification until some future time. The conclusion which we have reached causes us to vacate the sentence of death imposed upon Robert Cline and remand his case to the Superior Court with a direction to impose upon him forthwith the lifetime sentence called for by §11-23-2. After the imposition of sentence, the papers will be remitted to this court so that other facets of his appeal can be considered.

Mr. Chief Justice Bevilacqua did not participate.

*Dennis J. Roberts II,* Attorney General, *Nancy Marks Rahmes, John S. Foley,* Special Assistant Attorneys General, for plaintiff.

*William F. Reilly,* Public Defender, *Barbara Hurst,* Chief

---

[1]General Laws 1956 (1969 Reenactment) §11-23-2 in its entirety reads:

"Every person guilty of murder in the first degree, except as hereinafter provided, shall be imprisoned for life. Every person guilty of murder in the second degree shall be imprisoned for not less than ten (10) years and may be imprisoned for life. Every person who shall commit murder while committed to confinement to the adult correctonal institutions or the state reformatory for women shall be punished by death. The punishment of death shall be inflicted by the administration of a lethal gas."

Appellate Attorney, *John A. MacFayden III*, Assistant Public Defender, for defendant.