Argued and submitted August 14, 1989, the judgment affirmed as to the guilt phase and reversed as to the penalty phase; case remanded to the circuit court for resentencing January 11, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# JEFFREY SCOTT WAGNER,
*Appellant.*

## (CC 85061212; SC S32635)

786 P2d 93

Stephen J. Williams, Deputy Public Defender, argued the cause for appellant. With him on memoranda in response to the court's questions were Sally L. Avera, Acting Public Defender, and John P. Daugirda, Deputy Public Defender, Salem.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. With him on the memorandum in response to the court's questions were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Rives Kistler, and Brenda J Peterson, Assistant Attorneys General, Salem.

PETERSON, C. J.

Linde, J., dissented and filed an opinion in which Fadeley, J., joined.

## PETERSON, C. J.

In an earlier appeal of this aggravated murder case, this court affirmed the defendant's death sentence. *State v. Wagner,* 305 Or 115, 752 P2d 1136 (1988). The defendant petitioned to the Supreme Court of the United States for a writ of certiorari. The Supreme Court vacated the judgment and remanded the case to this court "for further consideration in light of *Penry v. Lynaugh,* 492 US ___ (1989)." *Wagner v. Oregon,* 492 US ___, 109 S Ct 3235, 106 L Ed 2d 583 (1989).

As directed by the Supreme Court, we have reconsidered our earlier decision in light of *Penry v. Lynaugh,* 492 US ___, 109 S Ct 2934, 106 L Ed 2d 256 (1989). We are compelled to vacate the judgment that affirmed the sentence of death. We remand the case to the trial court for retrial of the penalty phase only.

*Penry* concerns the constitutional requirement that a sentencing jury be given an effective opportunity to consider all aspects of a defendant's life and crime in fixing the appropriate sentence. The first question before us is whether ORS 163.150 (1987 Replacement Part) (in effect for defendant's trial and later amended as of July 24, 1989) permits the trial judge to submit to the sentencing jury a so-called "fourth question," *i.e.,* a query whether the death penalty is appropriate for this defendant, considering all aspects of his life and crime?[1] This is strictly a matter of statutory interpretation. The trial court in this case did not submit a fourth question to the sentencing jury.

Defendants in other death penalty cases before this court have argued that ORS 163.150 both permits a fourth question and is unconstitutional for not permitting one. The state contends, somewhat contrary to its position in *State v. Wagner, supra,* that the statute *permits* a fourth question if constitutionally required in an individual case. The point here is not to criticize the parties for their tactical choices in a matter of great seriousness, rather it is to note that both sides have, at one time or another, contended that ORS 163.150 permits a fourth question.

---

[1] The pre-amendment statute will henceforward be referred to as "ORS 163.150" and the post-amendment statute will be referred to as "ORS 163.150 (1989)." Or Laws 1989, ch 790, § 135b.

If the statute does not permit submission of such an issue, then the statute prior to its amendment is arguably facially unconstitutional and defendants sentenced to death under the statute arguably could not be subject to death on resentencing. The starting point for the statutory analysis is the language of the statute and this court's prior interpretation of the statute in *Wagner.*

ORS 163.105(1) provides that a defendant convicted of aggravated murder "shall be sentenced to death or life imprisonment pursuant to ORS 163.150." ORS 163.150 pertinently provides:

"(1)(a)   Upon a finding that the defendant is guilty of aggravated murder, *the court,* except as otherwise provided in subsection (2) of this section, *shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment or death.* The proceeding shall be conducted in the trial court before the trial jury as soon as practicable. If the defendant has pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose. *In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence; * * *. The state and the defendant or the counsel of the defendant shall be permitted to present arguments for or against a sentence of death.*

"(b)   Upon the conclusion of the presentation of the evidence, *the court shall submit the following issues to the jury:*

"(A)   Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B)   Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. In determining this issue, the court shall instruct the jury to consider any mitigating circumstances offered in evidence, including, but not limited to, the defendant's age, the extent and severity of the defendant's prior criminal conduct and the extent of the mental and emotional pressure under which the defendant was acting at the time the offense was committed; and

"(C)   If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

"(c)   The state must prove each issue submitted beyond

a reasonable doubt, and the jury shall return a special verdict of 'yes' or 'no' on each issue considered.

"(d)    The court shall charge the jury that it may not answer any issue 'yes' unless it agrees unanimously.

"(e)    *If the jury returns an affirmative finding on each issue considered under this section, the trial judge shall sentence the defendant to death.* If the jury returns a negative finding on any issue submitted under this section, the trial judge shall sentence the defendant to imprisonment for life in the custody of the Department of Corrections as provided in ORS 163.105." (Emphasis added.)

On its face, the statute neither precludes nor permits a general mitigation question. Either rendering, then, of the statute can find support, but we will not allow a question of such importance to turn on simplistic application of maxims of statutory interpretation (*e.g.*, the expression of one thing, *i.e.*, the listed issues, is the exclusion of another); uncritical reliance on the general legislative intent to enact a constitutionally valid death penalty; or resolution of a battle between the injunction to interpret a statute constitutionally if possible, *see, e.g., Cooper v. Eugene Sch. Dist. No. 4J,* 301 Or 358, 378, 723 P2d 298 (1986), *appeal dismissed* 480 US 942 (1987) (before invalidating a facially overbroad statute, the court is obliged to try to interpret the statute constitutionally, consistent with its purpose), or the general direction not to add to the terms of a statute, *see* ORS 174.010. These may be useful tools for decision, but they do not substitute for specific analysis in the first instance.

## THE STATUTE DOES NOT PRECLUDE A FOURTH QUESTION

ORS 163.150(1)(b) provides that "the court shall submit the following issues to the jury[.]" The statute then lists one issue, deliberateness; one issue with a mandatory instruction on mitigation, future dangerousness; and one contingent issue, provocation.

The statute does not state that these two issues and one contingent issue are the only issues that may be submitted to the jury. Indeed, although the statute only expressly provides for a mitigation instruction on the second issue, future dangerousness, this court nonetheless has interpreted the statute to require the admission of mitigating evidence on all

three issues and to allow for mitigation instructions on all three issues. *Wagner,* 305 Or at 156-57, 161, 167.

The statute states that the prosecution must prove each issue submitted beyond a reasonable doubt and requires the jury to respond "yes" or "no" on each issue considered, with unanimity required for "yes" (death). ORS 163.150(1)(c) and 163.150(1)(d). ORS 163.150(1)(e) is important in the analysis and it is a problem for any contention that the statute permits a general mitigation question. It provides:

> "If the jury returns an affirmative finding on each issue considered under this section, the trial judge shall sentence the defendant to death. If the jury returns a negative finding on any issue submitted under this section, the trial judge shall sentence the defendant to imprisonment for life * * *."

This provision is clearly the closest the statute comes to precluding a fourth question, stating as it does that death shall be the sentence if the jury is unanimously affirmative "on each issue considered under this section." The term "this section" clearly does not refer to subsection (1)(e), which does not otherwise describe the issues or deal with their submission. Just as clearly, it does not by its terms refer exclusively to subsection (1)(b) — the list of issues, instruction, and contingent issue — both because it does not do so expressly and because *"this section"* cannot by its terms be read to refer exclusively to *another subsection.* "[T]his section" is, moreover, implicitly defined in subsection (1)(a) of ORS 163.150, which speaks of "subsection (2) of this section," meaning subsection (2) *of ORS 163.150.*

Subsection (1)(e), by its reference to issues "considered under this section [*i.e.,* ORS 163.150]," thus clearly includes those issues submitted pursuant to subsection (1)(b), but it does not preclude the submission and consideration of other issues. Indeed, *Wagner* recognizes that ORS 163.150(1) must permit jury consideration of " 'any aspect of the defendant's character and record or any circumstances of his offense as an *independently* mitigating factor.' " *See State v. Wagner,* 305 Or at 160. (Emphasis added.)

Justice Linde's dissent in this case relies very heavily on the neutral Committee Explanation printed in the 1984 Voters' Pamphlet for the proposition that only if the jury answers the *three* statutory questions in the affirmative can

the penalty be death, *otherwise* the sentence is life imprisonment. In fact, however, the Committee Explanation provides arguably greater support to the contrary proposition that a fourth question is not precluded.

In addition to the language relied on by the dissent, the Explanation states that the statutes would

> "require that persons convicted of any type of aggravated murder be sentenced either to death by lethal injection or to life in prison * * *. [The measure] also provides that after someone is unanimously convicted of aggravated murder, the jury shall decide the sentence in a separate proceeding." 1984 General Election Voters' Pamphlet at 33.

The dissent's rendering of the statute to preclude a fourth question robs the measure of its primary stated intents, which are to subject those convicted of aggravated murder to the possibility of a capital sentence and to have the jury decide the appropriate sentence, death or life imprisonment, in a separate proceeding. The addition of a fourth question fulfills and furthers both purposes by preserving the possibility of a death sentence for convicted aggravated murderers and by permitting a jury to decide between life imprisonment and death.

To conclude that the statute does not facially preclude a fourth question does not, however, yet address whether it permits one.

## THE STATUTE PERMITS INTRODUCTION OF ALL CONSTITUTIONALLY RELEVANT MITIGATION EVIDENCE

This court in *Wagner* held:

> "We construe the statute [ORS 163.150] to mean that a defendant shall be permitted to introduce any competent evidence relevant to mitigation on any of the three issues." 305 Or at 156-57.

The focus of that holding is plainly on the range of mitigation evidence to be permitted; it is *not* on whether a fourth issue can or should be submitted to the jury. This is evident not only from the statement of the holding, but from the fact that the court focused on interpreting the statutory provision that *"evidence may be presented* as to any matter that the court deems relevant to sentence." 305 Or at 156. (Emphasis added.) The court thereby held that mitigation evidence *shall be*

*admissible* on all three statutory issues, not just the second, and that it would be *preferred practice to instruct* on mitigation on all three statutory issues, not just the second. 305 Or at 156-67.

The statute provides that the court shall conduct a separate proceeding to determine life imprisonment or death. ORS 163.150(1)(a). The statute allows at that proceeding evidence of any matter "that the court deems relevant to sentence," and further provides that each side "shall be permitted to present arguments for or against a sentence of death." *Id.* Thus far, the terms of the statute support a contention that the trial court has the authority to admit the broadest range of mitigating evidence and that a defendant may argue to the jury, based on that evidence, for a life sentence. These provisions do not, however, on their face, translate into a defendant's right to have a fourth, general mitigation question submitted to the jury.

The textual interpretation of ORS 163.150(1)(a) proffered above is fully supported by the holding of the court in *Wagner*. There the court held that "[u]nder ORS 163.150(1), the jury may consider all mitigating factors or circumstances that are shown by the evidence." 305 Or at 160. This holding interpreting the statute was both immediately preceded and followed by the court's recognition that the United States Supreme Court would presumably deem the Oregon statute unconstitutional if it " 'prevent[ed] the sentencer from considering *any* aspect of the defendant's character and record or *any* circumstances of his offense as an independently mitigating factor.' " 305 Or at 160 (quoting *Lockett v. Ohio,* 438 US 586, 607, 98 S Ct 2954, 57 L Ed 2d 973 (1978)). (Emphasis added.) Justice Linde in dissent in *Wagner* relied on United States Supreme Court precedent "to show the decisive point that the sentencer must not merely admit evidence but consider 'nonstatutory mitigating circumstances.' " 305 Or at 204. The court responded expressly to this point by holding, "We have no quarrel with that rule, and we conclude the Oregon scheme is not to the contrary." 305 Or at 161.

In interpreting and applying the statutory requirement that evidence may be presented as to any matter "the court deems relevant to sentence," the court in *Wagner* relied

on its interpretation of the then current federal precedents to conclude that jury consideration of mitigating evidence relevant to the three statutory issues was sufficient to satisfy federal constitutional mandates. Evidence "relevant to sentence" was thus *defined in constitutional terms,* and was then deemed to be limited to evidence relevant to the three statutory issues. The statute *on its face,* as we have seen, does not *require* more, and the court in *Wagner* did not feel compelled to construe it to *permit* more, *i.e.,* submission of a fourth question.

One year after *Wagner,* it can be seen that the dissents in *Wagner* read the federal precedents more insightfully than did the court and that Justice Gillette's dissent accurately concluded that the federal constitution could indeed require something more, some avenue for the sentencing jury to give meaningful effect to mitigating evidence relevant outside or beyond the statutory issues. *See* 305 Or at 219-32.[2] In June 1989, the United States Supreme Court so held in *Penry,* a case involving the Texas statute in which the Oregon statute has its roots. In *Penry,* the Supreme Court appears to have put its imprimatur on a fourth question as one mechanism for the sentencing jury to give meaningful effect to its consideration of the entire range of possible mitigating evidence and to provide a "reasoned moral response" to the ultimate question of whether the defendant should live or die. *Penry v. Lynaugh, supra,* 492 US at ___, ___, 109 S Ct at 2947, 2951, 106 L Ed 2d at 279, 284.

Justice Gillette's dissent in *Wagner* states:

"None of the foregoing [discussion of the federal precedents] necessarily requires holding that the Oregon statutory scheme is unconstitutional on its face. *This court could so construe the statute as to permit the admission of all mitigating evidence and to require an instruction to the jury delineating the scope of the jury's authority to reprieve an otherwise death-eligible defendant on the basis of that evidence.*

"I do not here propose any particular solution. One solution perhaps would be to instruct the jury that, even if it concludes that all three statutory questions should be

---

[2] Each of the opinions in *Wagner* devotes considerable space and consideration to the federal precedents and that analytic exercise will not be repeated here.

answered 'yes,' it nonetheless should answer one of them 'no' unless it unanimously concludes that the mitigating evidence does not call for a lesser penalty. A second alternative might have the jury answer a fourth, constitutionally-required question after the three statutory ones: After considering all the mitigating evidence, does the jury still unanimously conclude that the prisoner should be put to death, rather than spared? But the majority has offered no suggestion or language that would be consistent both with the statute and with the constitutional requirements.

"It is true, as the majority doubtless recognizes, that to give the statute some construction such as the ones I have described probably would require that the sentence in this case be vacated and the matter be remanded for resentencing. That appears to me to be a small price to pay for establishing a set of statutory and constitutional directives to permit trial courts in the future to conduct constitutionally adequate sentencing proceedings that would avoid future case-by-case evaluations as to which piece of evidence satisfied which statutory and/or constitutional criteria. If the people of this state are to receive reliable enforcement of the death penalty, they deserve to have this aspect of the statutory scheme fully explored and its constitutional limitations declared now." 305 Or at 232-33 (Gillette, J., dissenting). (Emphasis added.)

In view of what we have learned from *Penry*, it is now clear that mitigating evidence beyond the scope of the statutory issues is indeed constitutionally "relevant to sentence" and, accordingly, statutorily admissible. *See State v. Wagner*, 305 Or at 156-67; ORS 163.150(1)(a). The step from admissibility of such evidence to meaningful consideration by the jury, suggested by Justice Gillette as a possibility of statutory construction in *Wagner*[3] and required by the Supreme Court in *Penry* for a constitutionally valid death sentence, is the step we now take.

## ORS 163.150 PERMITS A GENERAL MITIGATION QUESTION

The source of the trial court's authority and responsibility to charge the jury is statutory. ORCP 58B(6) and 59B, applicable to criminal proceedings pursuant to ORS 136.330, respectively provide in relevant part:

"The court * * * shall charge the jury."

---

[3] Although Justice Linde joined generally in Justice Gillette's dissent, he did not concur on this point. 305 Or at 205.

"In charging the jury, the court shall state to them all matters of law necessary for their information in giving their verdict."

This source of authority and responsibility traces back in all essential particulars to the 19th century Civil Code in Oregon. *See, e.g., Smith v. Shattuck,* 12 Or 362, 369, 7 P 335 (1885).

Hand in hand with the trial court's responsibility to instruct the jury on "all [necessary] matters of law" is the "well-established rule in this state that a party litigant is *entitled* to have the court instruct the jury upon his theory of the case as formulated in properly requested instructions which correctly state the law, and which are founded upon the pleadings and the proof in the case." *Denton v. Arnstein,* 197 Or 28, 46, 250 P2d 407 (1952). (Emphasis added.)

In *State v. Farrar,* 309 Or 132, 786 P2d 161 (1990), for example, the defendant correctly contended, and submitted instructions accordingly, that he cannot constitutionally be sentenced to death unless the jury is instructed that it may spare his life if the jury believes, under all the circumstances, that it is appropriate to do so. *See State v. Wagner, supra,* 305 Or at 161 (agreeing that the jury must be permitted to "consider 'non statutory mitigating circumstances' "). In this case, the *pro se* defendant at trial did not submit properly requested instructions on general mitigation, although on appeal defendant asserts that evidence was received that required the submission of a fourth question and that "[d]efendant was entitled to additional jury instructions under *Penry.*"

For purposes of this inquiry into the application of ORS 163.150 and because the ruling in this case has general applicability to each of the death penalty verdicts rendered before the July 24, 1989, amendment of ORS 163.150, some of which cases expressly raised the issue at trial, the considerations expressed in *Denton v. Arnstein, supra,* which are equally applicable in the criminal sentencing context, apply in our analysis in this case.

We are thus left with circumstances in which (1) the federal constitution requires admission of all mitigating evidence; (2) the statute permits admission of such evidence; (3) the federal constitution requires a mechanism for meaningful consideration of all mitigating evidence, including evidence

beyond the scope of the statutory questions; (4) the statute permits arguments by defendant for life based on all mitigating evidence; (5) the trial court is obliged to instruct the sentencing jury on all necessary matters of law; and (6) defendant is entitled to an instruction that, notwithstanding an affirmative answer to the statutory questions, the jury may conclude that mitigating evidence justifies imposition of a life sentence.[4]

We hold that, in such circumstances, the trial court has the statutory authority under ORS 163.150(1), (and the constitutional responsibility if the facts require it), to submit to the sentencing jury a fourth question, in response to which the sentencing jury may spare a defendant from the death penalty, notwithstanding an affirmative finding on the issues listed in subsection (1)(b) of the statute.

Our conclusion is further supported by the fact that the United States Supreme Court has held that the capital-sentencing procedures of Texas, which are substantially identical to those in Oregon, are not facially unconstitutional in their treatment of mitigating evidence. *See Jurek v. Texas,* 428 US 262, 276, 96 S Ct 2950, 49 L Ed 2d 929 (1976) ("We conclude that Texas' capital-sentencing procedures, like those of Georgia and Florida, do not violate the Eighth and Fourteenth Amendments"). This court made a similar determination regarding the Oregon capital sentencing procedures under the state and federal constitutions in *Wagner.*

The United States Supreme Court did not reconsider the facial constitutionality of the Texas statute in its *Penry* decision. That court also remanded *Wagner* to this court for reconsideration in light of *Penry.* In neither instance did it overrule *Jurek.* If the United States Supreme Court wishes to overrule *Jurek,* that is its responsibility, not ours. This court has determined that the statute is facially constitutional in *Wagner* and now on reconsideration in light of *Henry* we adhere to that decision.

---

[4] A close reading of the dissent in this case shows that, with the possible exception of the second point summarized above, the dissent does not dispute any of the six collective rationales just enumerated. Rather, the dissent's position amounts to a statement that the court may not add what the people by initiative did not expressly provide.

## PROCEDURAL APPLICATIONS

The *Penry* decision was issued by the United States Supreme Court on June 26, 1989. Immediately thereafter, the 1989 Legislative Assembly initiated and passed legislation amending ORS 163.150. The amended statute provides, in part:

"(5) Notwithstanding paragraph (a) of subsection (1) of this section, the following shall apply:

"(a) If a reviewing court finds prejudicial error in the sentencing proceeding only, the court may set aside the sentence of death and remand the case to the trial court. No error in the sentencing proceeding shall result in reversal of the defendant's conviction for aggravated murder. Upon remand and at the election of the state, the trial court shall either:

"(A) Sentence the defendant to imprisonment for life in the custody of the Department of Corrections as provided in ORS 163.105(1)(c); or

"(B) Impanel a new sentencing jury for the purpose of conducting a new sentencing proceeding.

"(b) The new sentencing proceeding shall be governed by the provisions of subsections (1) and (2) of this section. A transcript of all testimony and all exhibits and other evidence properly admitted in the prior trial and sentencing proceeding shall be admissible in the new sentencing proceeding. Either party may recall any witness who testified at the prior trial or sentencing proceeding and may present additional relevant evidence.

"(c) The provisions of this section are procedural and shall apply to any defendant sentenced to death after December 6, 1984."

Accordingly, pursuant to ORS 163.150(5) (1989), the appropriate remedy in this case is a remand for resentencing. *See also State v. Wagner,* 305 Or at 233 (Gillette, J., dissenting).

■ We do not agree with defendant's contention that the requirement of ORS 163.150(1)(a) that the sentencing proceeding "shall be conducted * * * before the *trial jury* as soon as practicable" has any implications in the case of a remand for resentencing. (Emphasis added.) That provision is nothing more than the procedural directive to the trial court in the

ordinary course of events. There is no statutory or constitutional requirement, or persuasive jurisprudential rationale, to compel a resentencing before the original trial jury (to the contrary, the new statute requires a new jury) or to require a new guilt trial or default sentencing to something less than death simply because the original guilt phase jury has been discharged. If the state elects to pursue the death penalty, the new sentencing jury shall be selected in the same manner that the trial jury in a capital case is selected.

■■■ In accordance with subsection (1)(e) of ORS 163.150 (1989), the jury must answer the fourth question unanimously in the affirmative as a prerequisite to a death sentence. The state must prove each of the first three statutory issues submitted beyond a reasonable doubt; but that requirement does not apply to the fourth question. ORS 163.150(1)(d) (1989). There is no burden of proof on the fourth question because it does not present an issue subject to proof in the traditional sense, rather it frames a discretionary determination for the jury.

■ ORS 163.150(1)(b)(D) (1989), the new statutory statement of the fourth issue, made applicable to this resentencing proceeding pursuant to ORS 163.150(5)(b) (1989), provides:

> "If constitutionally required, considering the extent to which the defendant's character and background, and the circumstances of the offense may reduce the defendant's moral culpability or blameworthiness for the crime, whether a sentence of death be imposed."

We, frankly, have been unable to understand this provision grammatically, and we are extremely conscious of the need for clear direction from the legislature and the courts on the statutory and constitutional mandates of the death penalty sentencing procedures. The lack of grammatical clarity in the statutory statement of the issue must translate into an intelligible instruction to a jury for the sentencing process to be effective. Accordingly, consistent with ORS 163.150(1)(b)(D) (1989) and the guidelines of *Penry,* if constitutionally required in a particular case, the trial court must instruct each juror on the fourth issue, which instruction may (but need not) be the following:

> "Should defendant receive a death sentence? You should answer this question 'no' if you find that there is any aspect of defendant's character or background, or any circumstances of the offense, that you believe would justify a sentence less than death."

If any juror votes "no" on this or any of the four questions, the death penalty may not be imposed, because a sentence of death by a jury must be unanimous.

Additionally, the court must also instruct on the other issues set forth in ORS 163.150(1)(b) (1989). The instructions may (but need not) be the following:

> 1. Was the conduct of the defendant that caused the death of the deceased committed deliberately and with the reasonable expectation that death of the deceased or another would result?

> 2. Is there a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society? In determining this issue, you shall consider any mitigating circumstances offered in evidence, including, but not limited to, the defendant's age, the extent and severity of the defendant's prior criminal conduct and the extent of the mental and emotional pressure under which the defendant was acting at the time the offense was committed.

> (If raised by the evidence) 3. Was the conduct of the defendant in killing the deceased unreasonable in response to the provocation, if any, by the deceased?

We reject the state's dual contentions that mitigating evidence is limited under *former* or current ORS 163.150 to evidence causally related to the offense and that mitigating evidence may be constitutionally so limited. We do not believe that mitigation evidence can be practicably limited to items 'causally related' to the crime and we conclude that all aspects of a defendant's character and background are "relevant to sentence," *i.e.,* the jury's exercise of a reasoned moral response to the question "should defendant receive a death sentence?" *See State v. Wagner, supra,* 305 Or at 160 (the jury must be able to consider "*any* aspect of the defendant's character and record or *any* circumstances of his offense as an *independently* mitigating factor"). (Emphasis added.) *Penry,* 492 US at ___, 109 S Ct at 2947-52, 106 L Ed 2d at 278-84; *Franklin v. Lynaugh,* 147 US 164, 108 S Ct 2320, 101 L Ed 2d 155 (1988).

In the fourth question proposed above, we are asking the jury, in making its finding, to consider any mitigating aspect of defendant's life, alone or in combination, not necessarily related causally to the offense. This does no more than to provide the sentencing jury with the data traditionally available to the sentencing judge under the discretionary sentencing model for criminal cases. Acceptable instructions relating to evidence and proof of mitigating circumstances are set out in *State v. Farrar, supra* (decided this date).

The judgment is affirmed as to the guilt phase and reversed as to the penalty phase. The case is remanded to the circuit court for resentencing for the reasons stated in this opinion and in accordance with the procedures outlined herein.

**LINDE, J.,** dissenting.

We are reviewing a death sentence imposed in 1986 under a statute enacted in 1984. This court authoritatively construed that statute in 1988, when this case first came before the court. The court correctly held that the statute provided for a death sentence after conviction of aggravated murder if a jury found three facts specified in the statute. The court also held, over two dissents, that the statute as so interpreted was consistent with federal constitutional standards. *State v. Wagner,* 305 Or 115, 752 P2d 1136 (1988).

The majority was wrong. The United States Supreme Court remanded the case to this court after deciding that the death penalty could not be mandated on the three findings specified in Oregon's 1984 statute. *Penry v. Lynaugh,* 492 US ___, 109 S Ct 2934, 106 L Ed 2d 256 (1989).

On remand, the majority now acknowledges that the 1984 death penalty statute, as it was drafted by its sponsors and heretofore understood and defended by those charged with applying it, in fact was invalid under the United States Constitution. The majority also acknowledges doubts about applying the text of an emergency repair job attempted by the state's lawyers in the last hours of the 1989 legislative session. The majority therefore disregards the present text of the statute. It also jettisons its own prior interpretation in this very case. Instead, the majority constructs a statute of its own different from that enacted by the voters. I consider these

extraordinary efforts to resuscitate an unconstitutional statute unworthy of this court and of this state. I therefore dissent.

## I. WHAT DID THE 1984 DEATH PENALTY STATUTE MEAN?

The death penalty measure was put on the ballot by initiative petition in 1984. For reasons of their own, the sponsors chose a formula that calls upon jurors to answer three factual inquiries about a defendant who has been convicted of aggravated murder. The same formula (to be applied by trial judges) had been used in a 1978 initiative measure which was unconstitutional for other reasons. *See State v. Quinn,* 290 Or 383, 623 P2d 630 (1981). The 1984 statute (codified at ORS 163.150(1)(b)(1985)) instructed the trial judge to "submit the following issues to the jury." Briefly stated, the three issues were, first, whether the defendant acted deliberately and expected that someone's death would result; second, whether the defendant probably would commit violent crimes in the future, and third, in case of provocation, whether the defendant's conduct was an unreasonable response.[1] The 1984 statute then provided:

"If the jury returns an affirmative finding on each issue considered under this section, the trial judge shall sentence the defendant to death. If the jury returns a negative finding on any issue submitted under this section, the trial judge shall sentence the defendant to imprisonment for life in the custody of the Department of Corrections as provided in ORS 163.105."

---

[1] ORS 163.150(1)(b) (1985) provided:

"(b) Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

"(A) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. In determining this issue, the court shall instruct the jury to consider any mitigating circumstances offered in evidence, including, but not limited to, the defendant's age, the extent and severity of the defendant's prior criminal conduct and the extent of the mental and emotional pressure under which the defendant was acting at the time the offense was committed; and

"(C) If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased."

ORS 163.150(1)(e).

The three issues were questions of fact. The statute expressly called for "findings." It excluded discretion. If the jury returned an "affirmative finding on each issue," a sentence of death followed as a matter of law; if the jury returned a "negative finding" (more accurately, failed to return an affirmative finding) on any issue, the statute prescribed imprisonment for life.[2]

Indeed, eliminating discretion was the central feature of the 1984 measure. It sought, at least so far as the words of a law and of jury instructions can do this, to relieve both jury and judge of the choice whether or not to punish a defendant by death. Findings of fact would determine the applicable penalty. The jury could not vote for death without findings; the jury could not vote against death once it found the statutory facts. The judge's role was not judgment but only to announce the statutory sentence.

For that very reason, the statute included an express provision to allow the prosecution and the defense "to present arguments for or against a sentence of death." ORS 163.150(1)(a). If the jury were left to choose the penalty, the parties would need no special permission to argue for and against death; that would go without saying. The provision would be surplusage. But a statute limiting the jury to specified findings of fact might seem to forbid arguments drawing attention to the life-or-death consequences of those findings. The special permission for such arguments was not surplusage when its inclusion is seen to confirm the nonjudgmental, fact-finding questions put to the jury under the 1984 measure. The provision did not alter or add to those questions.

The decisive role of the three statutory issues appeared not only on the face of the statute. It was so explained to the voters by the committee charged with providing an impartial explanation in the Voters Pamphlet. The explanation stated:

"If the jury unanimously agrees that the defendant (1) acted deliberately with reasonable expectation of causing death, (2)

---

[2] The statute does not state what vote constitutes a "negative finding" of the jury, but it requires unanimity for affirmative findings. ORS 163.150(1)(d).

is probably a continuing threat to society, and (3) responded unreasonably to provocation, if any, by the murder victim, the sentence must be death by lethal injection. Otherwise the sentence is life in prison with a minimum of 30 years (20 years minimum upon a unanimous vote of the Parole Board) without possibility of parole. Any sentence of death will be automatically reviewed by the Oregon Supreme Court."

Official 1984 General Election Voters Pamphlet, Explanation to Measure No. 7. The explanation, like the text, did not refer to three specified findings among others not specified. It explained that if the jury finds the three listed facts, "the sentence must be death by lethal injection." It "must be" death, not "may be, depending on the jury's view of other considerations."

Suppose that shortly after the 1984 vote, in the face of the explicit text of the measure and this official explanation, someone had written in a Bar examination that the statute did not make the three questions decisive, that affirmative answers to all three did not lead to a death sentence, but that the statute required the jury further to answer whether in its view the death sentence for the individual defendant was appropriate on other, unspecified grounds. Such an answer would be graded on the assumption that the student could not or did not read the statute. The contention would be brushed aside by prosecutors and judges as baseless and flatly contrary to the statute. That, of course, is what happened when defendants later made such arguments. The state concedes that until the current round of cases it consistently, and successfully, maintained that the statute left no room for any issue beyond the three specified in the text.

What, in short, did the 1984 statute mean? As written and as presented to the voters, it meant that the penalty depended exclusively on three questions, not four. In this very case, the state told the United States Supreme Court that the statute asks the jury to answer *"the three statutory questions."* *Wagner v. Oregon* (No. 87-6820), State's Response in Opposition to Petition for Writ of Certiorari at 2.

Before the United States Supreme Court decided *Penry v. Lynaugh, supra,* Oregon's statute meant *no* "fourth question."

If *Penry* had never been decided, the 1984 statute would still mean *no* "fourth question."

If *Penry* had been decided differently, the Oregon statute now would mean *no* "fourth question." The state and the majority do not pretend otherwise.

The United States Supreme Court, of course, does not reinterpret or alter the meaning of an Oregon statute. The statute means after *Penry* what it meant before. In the words of the 1984 Voters Pamphlet explanation:

> "If the jury unanimously agrees that the defendant (1) acted deliberately with reasonable expectation of causing death, (2) is probably a continuing threat to society, and (3) responded unreasonably to provocation, if any, by the murder victim, the sentence must be death by lethal injection."

## II. THE 1984 STATUTE WAS UNCONSTITUTIONAL

The 1984 measure, and the 1978 measure before it, were deliberately designed so as to specify exclusive criteria confining the scope of the death penalty and to eliminate discretionary imposition of death. However, as Supreme Court decisions subsequently bore out, the drafters went too far. The statute enacted in 1984 fell short of the standards of the Fourteenth Amendment. It was unconstitutional as written.

The 1984 measure was unconstitutional because it did not allow the jury or the judge to decide against putting a particular person to death on individualized "mitigating" grounds unrelated to the three statutory questions. This constitutional requirement was argued at length by the dissenting opinions in this court's first decision in the present case. The Supreme Court had applied the requirement subsequent to Oregon's 1978 initiative measure in decisions that need not be again recited here. These decisions were known when the 1984 measure was drafted. Nonetheless, the sponsors of that measure chose to repeat the rigid formula mandating death upon the three specified findings.

The 1984 measure allowed the jury to consider any mitigating circumstances in answering the second question, "[w]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." ORS 163.150(1)(b)(B). Attaching

this provision to the second question made little sense, even to the majority in *Wagner I,* because personal mitigating conditions of the kind contemplated by the Supreme Court would not make the convicted person less of a future threat; they might just as likely make him more dangerous. *See* 305 Or at 206 (Linde, J., dissenting). In 1988, the majority believed that it could save the statute by letting the jury consider "any mitigating circumstances or factors with respect to any of the three questions." 305 Or at 167. But the court refused to go beyond the three specified questions and to create another, open-ended jury issue, a "fourth question," altogether outside the provisions of the statute.

In this respect the *Wagner I* majority was right. The statute mandated death upon affirmative answers to the three specified questions. But, as the current majority acknowledges, *Wagner I* proved to be wrong and the dissents to be right about the validity of the statute. In mandating death upon affirmative answers to the three statutory questions, the 1984 measure indeed was unconstitutional. Even if "mitigating evidence" was extended from the second question to all three questions, as *Wagner I* held, this would not and could not alter the terms of the factual issues that each juror must decide. A conscientious juror, after taking into account "mitigating evidence," would still be asked to decide only whether the defendant had acted deliberately, whether his act was an unreasonable response to any provocation, and whether there remained "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Under the statute, a juror who conscientiously answered yes to each question still could not vote against death on other, unrelated grounds.

The majority's efforts in *Wagner I* did not save the statute. *Penry* showed that the 1984 measure was unconstitutional as enacted and as interpreted in 1988.

### III. THE MAJORITY EXCEEDS THE BOUNDS OF INTERPRETATION

Had this court in 1988 correctly understood that the 1984 measure violated constitutional standards, the court would have so held, and the present case would have been over. It then would have been left to the legislative process to

reexamine the death penalty in light of due process requirements and of the experience with trials under the 1984 law, including all the issues debated in the earlier opinions in this case. It is ironic that only because the court was wrong in 1988 can it now seize upon the Supreme Court's remand to try some further, more drastic, rewriting of the 1984 measure. The majority now adopts what it correctly rejected in *Wagner I.* This second rewriting is far beyond the bounds of interpreting the 1984 law.

The sleight-of-hand by which it is done is easily exposed, if that mattered. It appears at the outset, when the majority puts the question whether the statute "permits" the trial court to ask the jury "whether the death penalty is appropriate for this defendant, considering all aspects of his life and crime." 309 Or at 7.

The majority's phrasing is not whether the statute "calls for" such an inquiry or "requires" such an inquiry or whether the answer is an element of the statutory plan. The answer in each case is no. When the majority shifts the question from what the statute *means* to what the statute *does not preclude,* 309 Or at 9, it acts in a way that, in a context of life and death, might be criticized as cynical: Instead of holding the lawmakers to the burden of specifying the conditions under which a person may be condemned to death, as other courts have done, the majority shifts to the defendant the burden of showing that the statute *excludes* each possible additional requirement, not enacted by anyone, that may be needed to allow a valid execution. The point of legislation, however, is to state expressly what is required, not to state expressly what is excluded; and I thought we were long past the era of common law definitions of crimes and punishments. Apparently not.

The majority contends that ORS 163.150(1)(e) did not mandate a sentence of death upon affirmative answers to the three issues specified in subsection (1)(b), because subsection (1)(e) referred to "each issue considered under this section" rather than "under subsection (1)(b)." The argument is specious. The entire *section* specified three issues, and three issues only, to be decided by the jury. As the Voters Pamphlet explanation stated, if the jury decided each issue affirmatively, "the sentence must be death by lethal injection."

Second, the majority quotes passages from *Wagner I* concerning the defendant's right to present mitigating evidence and to have that evidence considered by the jury. But those passages do not help the majority's argument. As the majority itself points out, the statute refers to evidence "that the court deems relevant to sentence." ORS 163.150(1)(a). And *Wagner I,* quoted by the majority, construed the statute to allow "any competent evidence *relevant to mitigation on any of the three issues.*" (Emphasis added.) 305 Or at 156-57. The point of the passage was that "mitigating" evidence might be relevant to all three statutory issues, not only to the second issue where the statute expressly mentioned it. But the passage contradicts rather than supports the current majority's attempt to create an entirely new issue beyond the three that the statute made decisive.

Another passage is quoted by the majority to claim that *Wagner I* allowed the jury to consider "non statutory" mitigating circumstances. 305 Or at 161. But the passage merely referred to evidence of circumstances beyond those that the statute applied to the second issue, ORS 163.150(1)(b)(B). Obviously *Wagner I* did not mean circumstances wholly outside the three statutory issues, because the 1984 measure denied the jury any way to act outside those issues. Given that *Wagner I* affirmed a conviction in which the jury was allowed no such opportunity, *Wagner I* cannot well be quoted to hold that the 1984 measure contemplated additional nonstatutory *issues* as well as consideration of nonstatutory circumstances bearing on the jury's findings on the three issues specified in the law.

The court's basis for its decision was clearly stated in *Wagner I,* 305 Or at 166:

> "Our review of [the] post-*Jurek* opinions leads us to the conclusion that the Supreme Court of the United States will uphold a scheme such as that presented in *Jurek* if the sentencer is allowed to consider all competent evidence relevant to any of the three questions presented. ORS 163.150(1) specifically provides for the introduction of any evidence relevant to the three questions, and, as we have noted above, even if the statute did not do so, relevant and competent evidence is admissible on any issue presented to the trier of fact."

This conclusion proved to be wrong. The current majority's

attempt now to reconstruct the opinion in *Wagner I* fails normal legal analysis as badly as does the majority's effort to reconstruct the 1984 measure, the measure that was submitted to the voters on the basis that upon affirmative findings on the specified issues, the sentence "must be death."

This is not a case in which due process under the Fourteenth Amendment simply requires some procedural safeguard not mentioned in a statute, some form of notice or an opportunity to meet the basis for a government action adverse to one's interests. Such procedural due process is readily provided without rewriting the substantive elements of the state's law. Nor is the issue here what evidence may be admitted, or what use the jury may make of that evidence. Those issues were settled in *Wagner I.*

Here we deal not with evidence, or procedure, or even instructions, but with the substance of the statutory test for life or death. The 1984 measure adopted an unmistakable substantive standard, a policy to put to death any person convicted of aggravated murder upon three specified findings. That measure was unconstitutional in 1984, and it was unconstitutional when it came before this court in 1988, as the Supreme Court now has confirmed. The majority now wants to pretend that the 1984 measure did not mean what it said, what the people were told that it said, what the Department of Justice and the courts consistently maintained, what this court one year ago held that the measure meant, and what the Attorney General told the United States Supreme Court in this very case. Rather, the majority now has the measure mean something very different, death or life upon unspecified individual circumstances considered by the jury.

This judicially rewritten statute is not the measure adopted in 1984. Moreover, it creates unexamined new constitutional problems of standardless and potentially unequal application under Article I, sections 20 and 21, of the Oregon Constitution.[3] If these problems and the choice of a different

---

[3] Article I, sections 20 and 21, of the Oregon Constitution provide:

"**Section 20.** * * * No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens.

"**Section 21.** * * * No *ex-post facto* law, or law impairing the obligation of contracts shall ever be passed, nor shall any law be passed, the taking effect of

scheme were properly studied and resolved by the appropriate lawmaking process, future constitutional issues could be decided by this court without a prior commitment to the validity of the revised scheme. The court's consideration of these issues should not be burdened, or appear to be burdened, by the fact that the court itself promulgated the revised version of the law, as the majority does today.

This is not the first state court to face the question whether it could or should reconstruct a death penalty law after a decision of the United States Supreme Court showed that the law as enacted was unconstitutional. Other courts have refused to do so. Thus, when an Indiana trial court modified the procedures prescribed by that state's death penalty law in order to make them comply with federal standards, the Indiana Supreme Court reversed and remanded the case with instructions to vacate the death sentence. *Bond v. State,* 273 Ind 233, 403 NE2d 812 (1980). The court wrote:

> "The State concedes that the statute has been ruled unconstitutional, but argues that as long as certain procedures are followed which guarantee the defendant's due process rights, the death penalty may, nevertheless, be imposed. * * *
>
> "The fixing of penalties for crimes is solely up to the Legislature, as the elected representative body, not the trial

---

which shall be made to depend upon any authority, except as provided in this Constitution; * * *."

*See State v. Cornell/Pinnell,* 304 Or 27, 741 P2d 501 (1987); *State v. Graves,* 299 Or 189, 195, 700 P2d 244 (1985) ("In addition to its function of giving fair notice of the forbidden conduct, criminal statute must not be so vague as to permit a judge or jury to exercise uncontrolled discretion in punishing defendants, because this offends the principle against *ex post facto* laws embodied in Article I, section 21, of the Oregon Constitution.")

Apart from this, questions remain whether the Oregon statute sufficiently narrows the class of defendants eligible for the death penalty to meet federal standards despite the majority's assurances in *Wagner I.* So many circumstances characterize aggravated murder under ORS 163.095 that in most intentional homicides prosecutors in fact may have a basis for charging aggravated murder if they so choose. Statewide crime statistics do not now show how many cases are charged and prosecuted as ordinary, nonaggravated murder without prior plea bargaining.

The extent of prosecutorial discretion to choose to pursue a death penalty upon such a broad spectrum of possible aggravated murder theories poses obvious possibilities of unequal or oppressive treatment. Only the state is in a position to maintain and provide adequate records on the initial pools of murder and aggravated murder suspects and the choice of charges. This is in addition to the essentially unguided jury discretion introduced by the "fourth question" invented by the majority.

courts. * * * The judiciary cannot usurp a legislative function by creating standards for imposing the death penalty."

403 NE at 815-16 (citations omitted).

Similarly, after it was established that an Idaho death penalty statute failed the test of the Fourteenth Amendment, the Idaho Supreme Court refused the state's request to reconstruct the statute so as to make it constitutional. The court wrote that "[t]o do so would require that we rewrite substantive statutory law," quoting and agreeing with the California Supreme Court that

" '[d]ecisions as to which criminal defendants shall suffer the death penalty, whether these decisions shall be made by judge or jury, whether and to what extent a jury determination is reviewable by the trial court and/or the reviewing court, and the scope of responsibility to be given this court to safeguard against arbitrary imposition of the death penalty are matters of legislative concern. Were this court to attempt to devise the necessary procedures and criteria we would not only invade the legislative province, but would also be in the position of having to pass objectively on the constitutionality of procedures of our own design.' "

*State v. Lindquist,* 99 Idaho 766, 589 P2d 101, 105 (1979), quoting from *Rockwell v. Superior Court,* 18 Cal 3d 420, 134 Cal Rptr 650, 665, 556 P2d 1101, 1116 (1976). The Idaho Supreme Court continued:

"The argument that the Idaho first degree murder statute imposing the death penalty can be construed by this Court to make it constitutional is subject to another infirmity. Such a retroactive construction, if applied to the facts of this case, poses serious *ex post facto* problems under Art. I, § 9, of the United States Constitution and Art. I, § 16, of the Idaho Constitution."

589 P2d at 105, citing to the same effect *Commonwealth v. Harrington,* 367 Mass 13, 323 NE2d 895 (1975). The Rhode Island Supreme Court similarly refused a request by the state to conform its death penalty statute to the requirements of the United States Constitution, stating that "[t]he task which the state wishes us to perform is one that comes within the exclusive purview of the legislative branch of our state government." *State v. Cline,* 121 RI 299, 397 A2d 1309 (1979). The Wyoming Supreme Court gave the same response to that

state's request to conform its death penalty statute to constitutional requirements, pointing out the additions to and changes in the statute that would be required, and concluding:

> "In addition, it would be necessary to add a phrase modifying this penalty and providing certain guidelines, which we, not the legislature, would be forced to promulgate. This would clearly be violative of the authorities above mentioned."

*Kennedy v. State,* 559 P2d 1014, 1017 (Wyo 1977).

Most telling is the response of the Ohio courts to the decisions of the Supreme Court in *Lockett v. Ohio,* 438 US 586, 98 S Ct 2954, 57 L Ed 2d 973 (1978), and *Bell v. Ohio,* 438 US 637, 98 S Ct 2977, 57 L Ed 2d 1010 (1978). It is most telling because *Lockett* was one of the decisions that showed the invalidity of the 1984 Oregon death penalty measure. After the Supreme Court's reversal in *Lockett,* the Ohio court did not send it and other similar cases back for another penalty hearing; instead it ordered entry of sentences of life imprisonment in 54 pending capital cases. *See State v. Cornely,* 56 Ohio St 2d 1, 7, 381 NE2d 186 (1978); *State v. Bridgman,* 55 Ohio St 2d 261, 265, 381 NE2d 184 (1978); *State v. Collins,* No. C-77614 (Ohio Ct App 1979).

This court should follow the example of the Ohio Supreme Court and other state courts that have refused to reverse their prior interpretations of state laws when death sentences under the existing law proved to be invalid.

## IV. THE 1989 AMENDMENT CAN ONLY APPLY TO FUTURE CASES

The Supreme Court's opinion in *Penry v. Lynaugh, supra,* was announced on June 26, 1989, a few days before the end of the 1989 legislative session. Correctly understanding that *Penry* invalidated Oregon's three-issue death penalty formula, the Department of Justice rushed to attach to a pending bill a last-minute amendment that adds a new fourth issue for the jury to decide in death penalty cases. Because today's majority opinion rightly avoids reliance on the 1989 amendment to revive the invalid death sentence in this 1985 murder case, that amendment requires only brief discussion.

The amendment adds to the three issues stated in ORS 163.150(1)(b)(A)-(C), *supra* note 1, a new paragraph (D):

"If constitutionally required, considering the extent to which the defendant's character and background, and the circumstances of the offense may reduce the defendant's moral culpability or blameworthiness for the crime, whether a sentence of death be imposed."

As the majority observes, the new provision is ungrammatical and obscure. The initial conditional phrase ("If" etc.) leaves in doubt whether "considering" is supposed to bear on "constitutionally required." The final phrase, "be imposed," lacks an active verb. The new provision also may fall short of what *Penry* requires insofar as it incorporates the state's position that mitigating circumstances must relate to defendants' culpability or blameworthiness *for the crime,* a position that today's majority opinion rejects. But those problems are for the future.

The amendment also provided that, in case a death sentence is set aside, certain provisions should apply in a resentencing proceeding under ORS 163.150(1). The new ORS 163.150(5)(c) states:

"The provisions of this section are procedural and shall apply to any defendant sentenced to death after December 6, 1984."

One may and probably should credit the drafters with knowing that a substantive provision would not become "procedural" by self-declaration. Retroactive application of a substantively revised death penalty law, newly enacted to replace an invalid law, would violate the prohibition of Article I, section 21, of the Oregon Constitution, *supra* note 3. *State v. Smith,* 56 Or 21, 107 P 980 (1910).

Had the prior statute not been unconstitutional, the new ORS 163.150(1)(b)(D) might be a provision mitigating the otherwise applicable penalty and not contravene the *ex post facto* clause. *State v. Smith,* 56 Or at 26. But because the 1984 penalty provisions were not valid, no death penalty could validly be applied under those provisions. If this court had correctly so decided in 1988, would anyone maintain that the legislature in 1989 could have provided for resentencing this defendant to death under a new, revised statute? The answer must be no. How could one now defend a different holding merely because the majority in 1988 failed correctly to apply the constitutional standard? Retroactive application of the

1989 statute would not be less *ex post facto* because this court erred.[4]

## V. CONCLUSION

In sum, the sponsors of the 1984 death penalty initiative chose as their model a Texas statute that was known to be vulnerable under previously decided United States Supreme Court cases. The measure was designed so that the jury only made findings on three factual issues specified in the statute. Neither the jury nor the judge literally decided for or against a death sentence or exercised any discretion apart from deciding the three issues. This was clearly explained to the voters in 1984.

It already was doubtful then that the measure met federal standards, because it excluded possible mitigating facts unrelated to the three statutory issues. When this defendant's case, the first under the 1984 measure, reached this court in 1988, the court knew that the statute might not pass muster under the decisions of the United States Supreme Court. The issue was fully debated in the opinions in *Wagner I*. The majority, over two dissents, decided that the scheme could be sustained as long as mitigating evidence could be introduced and considered by the jury in relation to all three

---

[4] The following passage from *State v. Smith,* 56 Or 21, 29, 107 P 980 (1910) (which refused to revive a superseded statute), including a part of the court's quotations from other cases, is pertinent in the present context:

"To hold otherwise would violate the settled policy of our Federal and State governments since their inception, to the effect that the judiciary shall not encroach upon the legislative departments of government. It is not the function of courts to make laws, but to interpret them. As summarized by Mr. Justice BEAN in *State ex rel v. Simon,* 20 Or 365, 373 (26 Pac 170, 172):

" 'Courts "must not, even in order to give effect to what they may suppose to be the intention of the legislature, put upon the provisions of a statute a construction not supported by the words, even although the consequences should be to defeat the object of the act." Smith's Stat. Const. S 714. This is a case, it would seem, where the legislature has omitted by mistake or otherwise to make the necessary provisions to carry out its intention, but we cannot by construction supply these omissions. As was held by Davis, J., "It is always competent for the legislature to speak clearly and without equivocation, and it is safer for the judicial department to follow the plain and obvious meaning of an act, rather than to speculate upon what might have been the views of the legislature in the emergency which may have arisen. It is wiser and safer to leave to the legislative department to supply a supposed or actual *casus omissus* than to attempt to do so by judicial construction." *People v. Woodruff,* 32 NY 364. * * *' "

statutory issues, not only the second question specified in the statute.

The possibility of a further "fourth question" was not overlooked. It was tentatively raised in one dissent. It was knowingly, and correctly, rejected by the six other members of the court. The *Wagner I* majority authoritatively held that Oregon's statute called for findings on only three issues, and it sustained the statute and affirmed the sentence on that basis.

In due course the Supreme Court's decision in *Penry* proved that the dissents in *Wagner I* were correct. The 1984 measure as written and as interpreted by this court indeed was unconstitutional. The Supreme Court vacated defendant's death sentence and remanded his case to this court.

The Chief Justice's opinion for the new majority now rewrites both the 1984 statute and its interpretation by this court in this same case one year ago. It embraces what it then rightly rejected. It makes a radical change in the design of the statute. Where the statute as written, as explained to the voters, and as interpreted in 1988 called upon the jury only for findings on three factual issues and deliberately avoided asking for any express judgment on whether to impose the death penalty, the new opinion discovers that the statute after all calls for such a judgment by the jury. And the opinion does this in the name of "interpretation," disregarding subsequent legislation that could not be applied *ex post facto* to this case. It is an astonishing performance.

Today's decision will not mark a proud day in the history of this court. It comes at the beginning of a new decade in which many societies are turning in revulsion from regimes that were too ready to put people to death. While Western nations among whom we claim leadership continue to reject the death penalty even for heinous crimes, this country is rapidly accumulating the largest number of persons sentenced to death and awaiting execution in the world.[5]

---

[5] A recent scholarly study begins: "The pattern is so simple it is stunning. Every Western industrial nation has stopped executing criminals, except the United States." Zimring and Hawkins, *Capital Punishment and the American Agenda* 3 (1986). A year ago, when this case was here before, about 2,000 prisoners were awaiting execution in the United States, and death penalty cases occupied large proportions of the work of supreme courts in many states. *See Wagner I,* 305 Or at 217-19 (Linde, J., dissenting). *See also Soering Case,* 1/1989/161/217 Eur. Ct. H.R. (1989), in which the

There is no legal reason why Oregon must add its share. To the contrary, today's majority opinion displays the extraordinary gymnastics required to salvage the unconstitutional 1984 measure. The straightforward and far easier course would be to face up to the decision of the United States Supreme Court and let the lawmakers start again, as other state courts have done.

Then why is this not done? That remains for others to explain. If Oregon historians in the coming century take any note of the state's and this court's recent experiences with the death penalty, they may note that the current murderous ferocity of criminal behavior has called forth a ferocious popular demand for equivalent retribution against the guilty, to the point of initiating repeal of major constitutional guarantees in such cases.[6] But a statute is no more than a statute because it was enacted by the initiative process rather than by the Legislative Assembly. It deserves as much judicial respect as ordinary legislation, but no more than that. I recall no instance where this court has gone to similar lengths to alter and distort its earlier interpretation of far less consequential legislation as it does here, where life or death are at stake.

It is our duty not to extend the death penalty law beyond its exact terms. This is not due to sympathy or concern for a defendant. *See Wagner I,* 305 Or at 191 (Linde, J., dissenting). The popular demand for retribution may run wide, but it is not unanimous. For many Oregonians, maybe hundreds of thousands, execution of a death sentence by state officials acting on behalf of the citizens of Oregon implicates them in a morally repugnant act. They may not be the majority, but they too are entitled to adherence to the law. The court

---

European Court of Human Rights directed the United Kingdom not to extradite a German national to Virginia because incarceration for years under the conditions prevailing on death row would subject the defendant to cruel and unusual treatment or punishment contrary to Article 3 of the European Convention on Human Rights and Fundamental Freedoms.

As this court is engaged in reinventing a death penalty law for Oregon, press reports note that one of Romania's first acts upon emerging from totalitarianism was to abolish the death penalty. N.Y. Times, Jan. 2, 1990, at A6, Col. 5.

[6] The 1984 measure accompanied a constitutional amendment that made Article I, section 15 (reformation as object of penal laws) and section 16 (proportionality and prohibition of cruel or unusual punishments) inapplicable to the death penalty for aggravated murder. *See* Or Const Art I, § 40 (1989).

owes them the duty not to create a new death penalty law beyond the unconstitutional 1984 measure. The court fails in that duty today.

I dissent.

Fadeley, J., joins in this dissenting opinion.