Argued and submitted March 8, judgment of conviction and sentence of death affirmed August 3, 2000

# STATE OF OREGON,
## *Respondent,*

*v.*

# MICHAEL JAMES MCNEELY,
## *Appellant.*

## (CC 93-05-33276; SC S41941)

8 P3d 212

Eric Johansen, Deputy Public Defender, Salem, argued the cause for appellant. David E. Groom, State Public Defender, Anthony Bornstein, Deputy Public Defender, and Stephen J. Williams, Deputy Public Defender, filed the brief for appellant.

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Kathleen Cegla, Assistant Attorney General.

Before, Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.*

VAN HOOMISSEN, J.

---

* Kulongoski, J., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

This criminal case is before the court on automatic and direct review of defendant's conviction for aggravated murder and sentence of death. *Former* ORS 163.150(1)(g) (1997), *repealed by* Or Laws 1999, ch 1055, § 1.[1] For the reasons that follow, we affirm the judgment of conviction and the sentence of death.

The victim in this case disappeared from Portland in March 1993. In May 1993, her body was discovered in a dumpster. An autopsy indicated that she had died of strangulation. Defendant was convicted of seven counts of aggravated murder and 12 other felonies in connection with her death.[2] After the jury answered Oregon's four death-penalty sentencing-phase questions in the affirmative, ORS 163.150(1)(b), the trial court sentenced defendant to death. On review, defendant makes 18 assignments of error. Defendant seeks reversal of his conviction. In the alternative, he requests that this court vacate his death sentence.

### GUILT PHASE

Defendant makes six assignments of error relating to the guilt phase of his trial, only two of which warrant discussion.

Defendant contends that the trial court erred in denying his motion to suppress the testimony of Thompson, another jail inmate. While defendant was in jail, another inmate introduced defendant to Thompson. Thompson spoke with defendant several times over a three- or four-day period. During some of those conversations, defendant discussed the facts of this case. A few days after those conversations took

---

[1] Judgments of conviction and sentences of death now are subject to automatic review in this court under ORS 138.012(1). In enacting ORS 138.012(1), the legislature renumbered the statute that described the court's reviewing authority in death-penalty cases, but made no substantive change to that authority. That statutory change does not affect the analysis or disposition of this case.

[2] Defendant also was convicted of murder, manslaughter, kidnapping (two counts), rape, attempted rape, sodomy (two counts), attempted sodomy, abuse of a corpse (two counts), and unauthorized use of a vehicle.

place, Thompson contacted the police and disclosed incriminating statements that defendant had made to him about the victim's death.

At trial, defendant objected to Thompson's testimony. Defendant's theory was that Thompson was acting as a state-controlled informant when he obtained defendant's incriminating admissions. Defendant argued that, because Thompson was attempting to gain a benefit from the state by providing information to the police, Thompson automatically became a "state agent" for purposes of the state and federal constitutions.

In denying defendant's motion to suppress Thompson's testimony, the trial court in this case stated:

"Well, first of all, I'm going to deny the motion and find that Mr. Thompson was acting as a private citizen on his own initiative and for his own reasons in contacting or in speaking with * * * [defendant], I don't think he actually contacted [defendant] based on the evidence, but once he was contacted by [defendant] he was not being directed or even indirectly was he involved with the police in any way, any police agency in either initiating, planning, controlling or supporting his activities. So, I find that the exclusionary rule simply doesn't apply in this case.

"As for these issues of his ultimately perhaps receiving some benefit, I would agree with the State's position that the fact that he may have received a benefit ultimately as a result of this does not then make him an agent of the State at the outset of the contacts. * * *

"Obviously anybody who, in the course of their time in prison, who happens to come upon some evidence, as he apparently did, someone willing to talk to him who was charged with a serious crime, Mr. Thompson used his brain here and realized that maybe this could assist him as well as what he had undertaken in connection with that agreement, and apparently it may have benefitted him. But that does not then result in his being termed an agent of the State at the time that he first made the contact. There is simply no evidence whatsoever to indicate that anybody asked him to do this."

Defendant's assignment of error presents the question whether his state or federal constitutional rights to remain silent and to counsel were violated.[3]

■ In *State v. Smith*, 310 Or 1, 13, 791 P2d 836 (1990), this court adopted the rule that, if the police are involved to a sufficient extent in initiating, planning, controlling, or supporting an informant's activities, then the exclusionary rule applies. Defendant points to no evidence in the record demonstrating that anyone from the state initiated, planned, controlled, or supported Thompson's activities in obtaining information from defendant about this case. We hold that the trial court properly refused to suppress Thompson's testimony.[4]

Defendant contends, in the alternative, that the trial court erred in denying his motion to exclude Thompson's testimony, because Thompson was unable to identify defendant at trial as the man with whom he had spoken in jail. At a pretrial hearing, Thompson was unable to identify defendant. At trial, Thompson again stated that he did not recognize defendant. Defendant objected, arguing that because Thompson was unable to identify defendant, his testimony was irrelevant.

---

[3] Article I, section 11, of the Oregon Constitution, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

Article I, section 12, of the Oregon Constitution, provides, in part:

"No person shall be * * * compelled in any criminal prosecution to testify against himself."

The Fifth Amendment to the United States Constitution provides, in part:

"No person * * * shall be compelled in any criminal case to be a witness against himself[.]"

The Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

The quoted portions of the Fifth and Sixth Amendments are applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 US 1, 6, 84 S Ct 1489, 12 L Ed 2d 653 (1964) (Fifth Amendment); *Pointer v. Texas*, 380 US 400, 403, 85 S Ct 1065, 13 L Ed 2d 923 (1965) (Sixth Amendment).

[4] Defendant makes no argument, and we are aware of none, suggesting that the result would be different under the Fifth or Sixth Amendments. *See Kuhlmann v. Wilson*, 477 US 436, 459, 106 S Ct 2616, 91 L Ed 2d 364 (1986) (defendant must demonstrate that police took some action, beyond merely listening to informant, that was designed to elicit incriminating remarks).

The trial court ruled:

> "Okay. Well, I'm going to allow Mr. Thompson to testify. I have heard his testimony at the pretrial hearing and I'm satisfied that although he was not able to specifically identify the—[defendant] in the courtroom, there is ample evidence that his appearance is different now, and based upon the evidence that he did—or testimony that he did give at the time, I believe that it should go to the weight and not the admissibility of his testimony. So, I'll allow him to testify."

On review, defendant argues that Thompson's testimony was irrelevant and should have been excluded at trial. The state responds that Thompson's testimony was "conditionally relevant," citing OEC 104,[5] and, thus, was properly admitted.

■    Defendant's assignment of error presents a question of conditional relevancy. We review to determine whether there was sufficient evidence for the trial court to have submitted the issue to the jury. *See State v. Carlson*, 311 Or 201, 208-11, 808 P2d 1002 (1991) (discussing OEC 104). We view the record as consistent with the trial court's ruling, accepting reasonable inferences and reasonable credibility choices that the trial judge could have made. *Id.* at 214.

■    When dealing with a matter of conditional relevancy under OEC 104(2), the judge determines whether the foundation evidence is sufficient for the jury reasonably to find that the condition on which relevance depends has been fulfilled. *Carlson*, 311 Or at 209. If so, the evidence is admitted; if not, the evidence is not admitted. *Id.* After the judge decides that the foundation evidence is sufficient for the jury

---

[5] OEC 104 provides, in part:

"(1) Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination the court is not bound by the rules of evidence except those with respect to privileges.

"(2) When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

Conditional relevancy means a situation where one fact is relevant only if another fact is proven. Laird C. Kirkpatrick, *Oregon Evidence*, 31 (2d ed 1989 & supp 1999).

reasonably to find the contested fact under OEC 104(2), either party may introduce evidence before the jury that is relevant to the weight and credibility of the evidence. *Id.* at 210.

■     At trial, Thompson testified that he had spoken with a man in jail who had admitted choking and killing the victim. If defendant were that man, then Thompson's testimony was relevant evidence.[6] There also was evidence at trial that Thompson and defendant had met in jail in 1993. Thompson testified:

> "I spoke to somebody that represented himself as being [defendant] or was represented by somebody else as being [defendant]."

Thompson related several incriminating conversations that he had had with that man. Moreover, there also was evidence that defendant had gained 25 pounds and had shaved off his moustache since the time when he and Thompson were in jail together.

Despite Thompson's inability to identify defendant at trial, the trial court determined that a reasonable juror could find that defendant was the person with whom Thompson had spoken in jail. The record supports that conclusion. We agree with the trial court. Thompson's inability to identify defendant at trial went to the weight the jury might give to his testimony, not to its admissibility. It follows that the trial court did not err in leaving the matter to the jury.

■     Defendant next contends that the trial court erred in denying his motions for a mistrial during the guilt phase of his trial. Defendant moved for a mistrial both during and after the prosecution's closing argument. He advanced several grounds for those motions, only one of which warrants

---

[6] Under OEC 401, "relevant evidence" is

> "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The standard contained in OEC 401 is a very low threshold that evidence must cross to be considered relevant. *State v. Stevens*, 319 Or 573, 584, 879 P2d 162 (1994).

discussion. We review the trial court's ruling for an abuse of discretion. *State v. Larson,* 325 Or 15, 22, 933 P2d 958 (1997).

■    During closing argument, the prosecutor argued:

"Who is this man over here? Who is this man here? You've gotten to know him for two-and-a-half weeks. Don't lose sight of [the victim] because you've seen a living, breathing human body over here. That might invoke some sympathy on your part.

"Who is that man over there? If we could resurrect [the victim] for you maybe she could tell you. If we could do that."

Defense counsel objected to the state's argument and moved for a mistrial, citing *State v. Leland,* 190 Or 598, 227 P2d 785 (1951), *aff'd sub nom Leland v. Oregon,* 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952).[7] The trial court denied defendant's motion.

Defendant asserts that the following passage from *Leland,* 190 Or at 642, is relevant here:

"The argument [reference to the murdered victim as the state's 'silent witness'] was not particularly inflammatory, but it might have become so had it continued along the same lines, and we think the court did well to put a prompt stop to it. The ruling had the effect of forestalling any prejudice that might otherwise have resulted. There was no abuse of discretion in denying the motion for a mistrial."

Defendant argues that, unlike in *Leland,* "the prosecutor here was allowed to continue with this inflammatory theme."

We agree with the state that the prosecutor did not violate defendant's rights "by pointing out the obvious to the jury." Moreover, our reading of the record does not support defendant's assertion that the prosecutor continued with this theme, even assuming that it was such. Following defendant's objection, the prosecutor mentioned the victim only once more, telling the jurors, "Don't for a moment forget

---

[7] Article I, section 11, of the Oregon Constitution, provides, in part: "In all criminal prosecutions, the accused shall have the right to * * * meet the witnesses face to face[.]" The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

about [the victim]." The trial judge, who was in the best position to assess the impact of the prosecutor's comment on the jury, expressly concluded that it was not impermissibly prejudicial to defendant. We will not disturb that conclusion. We hold that the trial court did not err.

## PENALTY PHASE

Defendant makes 12 assignments of error regarding the penalty phase of his trial. Only three warrant discussion.

■  Defendant contends that the trial court erred in denying his motion for a mistrial during the state's closing argument in the penalty phase. The prosecutor told the jury:

> "But let's talk a little bit about the things that they said about why [defendant] is the way that he is today. Excuses after excuses after excuses were brought before you during the testimony of these people. And this relates not to the questions that you have here but it relates to the word 'provocation,' and it relates to the defendant not taking responsibility for his actions and it relates generally to his inability to take responsibility—
>
> "* * * * *
>
> "Think back to Dr. McGovern's testing of the defendant. Think back to that. Did he take responsibility for his thefts? Sometimes. At least according to Dr. McGovern, even though Dr. McGovern's colleague did not get that indication.
>
> "Did he take responsibility for committing an act of prostitution? No. Did he take responsibility for the fact that he beat his prior lovers? Never. How was it that [defendant] referred to his prior relationship with these women and how was it that it was characterized by Dr. McGovern? Oh, he had problems with the people he was involved with. They had misunderstandings. They had problems. But nobody, nobody who took the stand for the defendant in the last day-and-a-half has come up here and admitted to you that the defendant has a problem."

Defendant moved for a mistrial, claiming that the prosecutor's remarks were an impermissible comment on defendant's decision not to testify. The trial court denied defendant's motion, explaining that the prosecutor's comment

"was appropriate given Dr. McGovern's testimony[.]" Defendant renews that argument here. The state responds that no reasonable juror would have interpreted the prosecutor's remarks to be such a comment. We review the trial court's ruling for an abuse of discretion. *Larson*, 325 Or at 22.

The prosecutor's comment concerned defendant's refusal to take responsibility for his actions *in the past*. A discussion of a capital defendant's failure to take responsibility for his conduct *in the past* is related to the issue of that defendant's *future* dangerousness, which is the subject of the second penalty-phase question. ORS 163.150(1)(b)(B). Under the circumstances, the trial court was entitled to conclude that a reasonable juror would have understood that he or she was being asked by the prosecutor to conclude that defendant, whom the state had argued had a history of unwillingness to accept responsibility for his conduct, was likely to be dangerous in the future. We hold that the trial court did not abuse its discretion in refusing to grant a mistrial.

Defendant contends that the trial court erred in denying his motion to limit the prosecutor's rebuttal argument in the penalty phase. The trial court submitted four questions to the jury. ORS 163.150(1)(b). The fourth question asked the jury "[w]hether the defendant should receive a death sentence." ORS 163.150(1)(b)(D). Defendant timely moved for an order precluding the state from presenting *any* argument "that relates to or touches on the fourth question." Relying on ORS 163.150, defendant argued:

"[T]he state should be precluded, because there is no burden of proof on the fourth question, of [*sic*] presenting evidence either in rebuttal or argument, that relates to or touches on that fourth question. That fourth question is set out as a defendant's question * * *."

The trial court concluded that the statute allows the state to present argument on the fourth question and denied defendant's motion.

Defendant argues that the trial court's ruling permitting the state to present argument on the fourth question violated his rights under ORS 163.150. He relies primarily on *State v. Wagner*, 309 Or 5, 18, 786 P2d 93 (1990):

"The state must prove each of the first three statutory issues submitted beyond a reasonable doubt; but that requirement does not apply to the fourth question. ORS 163.150(1)(d) (1989). There is no burden of proof on the fourth question because it does not present an issue subject to proof in the traditional sense, rather it frames a discretionary determination for the jury."

Defendant asserts that, absent a burden of proof, the state has no right to present *any* argument on the fourth question.

■■■■ Whether ORS 163.150(1) prohibits the state from presenting rebuttal argument is a question of statutory interpretation. In interpreting a statute, the court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). At the first level of our analysis we examine both the text and context of the statute. The text of the statute is the best evidence of the legislature's intent. *Id.* If the legislature's intent is clear from the inquiry into text and context, further inquiry is unnecessary. *Id.* at 611.

■■■■ The answer to defendant's argument is clear. The text of ORS 163.150(1)(a) unambiguously permits the state to argue for a sentence of death. That paragraph provides, in part:

"The state and the defendant or the counsel of the defendant shall be permitted to present arguments for or against a sentence of death and for or against a sentence of life imprisonment with or without the possibility of release or parole."

*See also State v. Guzek*, 322 Or 245, 262, 906 P2d 272 (1995), (state and defense may make arguments for and against death penalty under each question, citing ORS 163.150(1)(a) (1985)).

Defendant argues, in the alternative, that, even if the state may present arguments related to the fourth question in its initial argument, it may not present *rebuttal* argument on the fourth question, because it does not bear the burden of proof on that question. The state responds that, as the plaintiff in a criminal case, it commences and concludes the arguments to the jury during both the guilt phase and the penalty phase of the trial. Defendant replies, however, that

the *Stevens* court mentioned in *dictum* that a plaintiff is entitled to rebuttal because the plaintiff bears the burden of proof. *Id.* at 148. From that statement, defendant posits that, because the state has no burden of proof on the fourth question, ORCP 58 B(4) is inapplicable here. ORCP 58 B(4) provides, in part:

> "When the evidence is concluded, *.* * the plaintiff shall commence and conclude the argument to the jury[.]"

ORS 136.330(1) makes ORCP 58 B applicable to criminal trials. *See State v. Stevens*, 311 Or 119, 147-48, 806 P2d 92 (1991) (penalty and guilt phases are governed by ORCP 58 B(4)).

Assuming, *arguendo*, that the rule allowing a plaintiff the opportunity for rebuttal arose because a plaintiff bears the burden of proof, that does not change or limit the text of ORCP 58 B(4). When the legislature adopted that rule, it did not limit a plaintiff's right to rebuttal to those issues on which the plaintiff bore the burden of proof. We agree with the state that ORCP 58 B(4) authorizes the state to present rebuttal argument on any penalty-phase matter raised by a defendant's argument. We conclude that, absent some limit, statutory or constitutional, on ORCP 58 (B)(4)—and defendant identifies none here—the state may address the fourth question in its rebuttal closing argument. Accordingly, we hold that the trial court did not err in denying defendant's motion to limit the prosecutor's penalty-phase rebuttal argument on the fourth question.

■ Defendant also contends, without analysis or elaboration, that the trial court's ruling violated his Eighth and Fourteenth Amendment rights to a reliable sentencing hearing and due process. Defendant's summary reference to the Eighth and Fourteenth Amendments is insufficient to present any specific federal constitutional argument to this court and, accordingly, we decline to address the issue. *See State v. Barone*, 329 Or 210, 986 P2d 5 (1999), citing *State v. Montez*, 309 Or 564, 604 789 P2d 1352 (1990) (declining to address undeveloped claim of constitutional error).

Finally, defendant contends that the trial court erred in failing to declare the death penalty unconstitutional.

Defendant correctly recognizes that this court has considered and rejected in earlier cases all the state and federal constitutional grounds on which he relies for this assignment of error. The trial court did not err in failing to declare the death penalty unconstitutional.

We have considered all of defendant's assignments of error and every argument made in support thereof. Any assignment or argument not discussed in this opinion has been considered previously by this court and resolved against defendant, is not well taken, or is unpreserved. An extended discussion of those assignments and arguments would not benefit the bench or bar.

The judgment of conviction and sentence of death are affirmed.